## The United States, plaintiffs v. Lawrence Coombs.

Indictment in the circuit court of the United States for the southern district of New York, for feloniously stealing a quantity of merchandise belonging to the ship Bristol, the ship being in distress and cast away on a shoal of the sea on the coast of the state of New York. The indictment was founded on the 9th section of the act, entitled "An Act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes; approved 3d March, 1825." The goods were taken above high water mark, upon the beach, in the county of Queens, in the state of New-York. Held, that the offence committed was within the jurisdiction of the circuit court.

If a section of an act of congress admits of two interpretations, one of which brings it within, and the other presses it beyond the constitutional authority of congress; it is the duty of the Supreme Court to adopt the former construction: because a presumption never ought to be indulged, that congress meant to exercise or usurp any unconstitutional authority; unless that conclusion is forced on the Court, by language altogether unambiguous.

In cases purely dependent upon the locality of the act done, the admiralty jurisdiction is limited to the sea, and to the tide-water as far as the tide flows. Mixed cases may arise, and often do arise, where the act and services done are of a mixed nature; as where salvage services are performed partly on tide-waters and partly on shore, for the preservation of the property, in which the admiralty jurisdiction has been constantly exercised to the extent of decreeing salvage.

Under the clause of the constitution giving the power to congress "to regulate commerce with foreign nations, and among the several states," congress possesses the power to punish offences of the sort enumerated in the ninth section of the act of 1825. The power to regulate commerce, includes the power to regulate navigation, as connected with the commerce with foreign nations, and among the states. It does not stop at the mere boundary line of a state; nor is it confined to acts done on the waters, or in the necessary course of the navigation thereof. It extends to such acts done on land which interfere with, obstruct, or prevent the due exercise of the power to regulate commerce and navigation with foreign nations, and among the states. Any offence which thus interferes with, obstructs, or prevents such commerce and navigation, though done on land, may be punished by congress, under its general authority, to make all laws necessary and proper to execute their delegated constitutional powers.

Upon the general principles of interpreting statutes, where the words are general, the court are not at liberty to insert limitations; not called for by the sense, or the objects, or the mischiefs of the enactment.

THIS case came before the Court on a certificate of a division of opinion between the judges of the circuit court for the southern district of New York.

Lawrence Coombs was indicted under the 9th section of the act

entitled, " an act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes, approved the 3d of March, 1825,", for having, on the 21st of November, 1836, feloniously stolen at Rockaway Beach, in the southern district of New York, one trunk of the value of five dollars, one package of yarn of the value of five dollars, one package of silk of the value of five dollars, one roll of ribbons of the value of five dollars, one package of muslin of the value of five dollars, and six pairs of hose of the value of five dollars; which said goods, wares and merchandise, belonged to the ship Bristol, the said ship then being in distress and cast away on a shoal of the sea on the coast of the state of New York, within the southern district of New York. On this indictment the prisoner was arraigned, and plead not guilty, and put himself upon his country for trial.

It was admitted that the goods mentioned in the indictment, and which belonged to the said ship Bristol, were taken above high water mark, upon the beach, in the county of Queens; whereupon the question arose, whether the offence committed was within the jurisdiction of the court; and on this point the judges were opposed in opinion.

Which said point upon which the disagreement happened, was stated under the direction of the judges of the court, at the request of the counsel for the United States, and of Lawrence Coombs, parties in the cause; and ordered to be certified unto the Supreme Court at the next session, pursuant to the act in such case made and provided.

The case was argued by Mr. Butler, attorney general of the United States. No counsel appeared for the defendant.

Mr. Butler stated that no jurisdiction could exist over the case, unless it was given by the acts of congress. The first crimes act of the United States, of 1790, and the act of 1825, showed the object of congress to have been to prevent the perpetration of such crimes as those charged against the defendant. The penalties imposed by the first act, were found to be too heavy. The act of 1825 was passed, and many offences were included in it which were in the first law. These offences were those which might be committed " on the high seas, and out of the jurisdiction of a particular state." But the 9th section omits the limitation of " the high seas," &c.

The ship must be cast away, or be in distress, or be wrecked in

the admiralty jurisdiction; and if any person steals goods belonging to her, the punishment attaches. In this case, it was admitted that the ship was in the condition described in the act; but the goods were above high water mark when stolen.

The rest of the section shows that the object of congress was to include cases above high water mark. "Showing false lights" would, in most cases, be on the shore and in places above the tide.

No serious doubt of the power of congress to punish such offences can exist. The power given by the constitution to regulate commerce, necessarily includes the power to protect the goods which are the subject of commerce; and it is of no consequence whether the commerce is foreign or domestic.

The view which congress entertained of this power, is shown by its legislation in the first crimes act; in which, aiding or advising in piracy, is made punishable. These are acts which, in many cases, would be done on shore. All that is necessary is, that the matter which is the subject of the prosecution, shall be connected with, or have grown out of commerce.

Mr. Justice STORY delivered the opinion of the Court.

This is a case, certified upon a division of opinion of the judges of the circuit court, for the southern district of New York. The case, as stated in the record, is as follows:

Lawrence Coombs was indicted under the 9th section of the act, entitled "An act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes," approved the 3d of March, 1825; for having, on the 21st of November, 1836, feloniously stolen, at Rockaway Beach, in the southern district of New York, one trunk of the value of five dollars, one package of yarn of the value of five dollars, one package of silk of the value of five dollars, one roll of ribbons of the value of five dollars, one package of muslin of the value of five dollars, and six pairs of hose of the value of five dollars, which said goods, wares and merchandise, belonged to the ship Bristol, the said ship then being in distress, and cast away on a shoal of the sea, on the coast of the state of New York, within the southern district of New York. On this indictment the prisoner was arraigned, and plead not guilty; and put himself upon his country for trial.

It was admitted, that the goods mentioned in the indictment, and which belonged to the said ship Bristol, were taken above high water

mark, upon the beach, in. the county of Queens; whereupon, the question arose whether the offence committed was within the juris-. diction of the court; and on this point the judges were opposed in opinion.

Which said point, upon which the disagreement has happened, is stated above, under the direction of the judges of said court; at the request of the counsel for the United States, and Lawrence Coombs, parties in the cause, and ordered to be certified unto the Supreme Court at the next session, pursuant to the act in such case made and provided.

The ninth section of the act of 1825, ch. 276, on which the indictment in the present case is founded, is in the following words: "That if any person shall plunder, steal, or destroy any money, goods, merchandise, or other effects from, or belonging to, any ship or vessel, or boat, or raft which shall be in distress, or which shall be wrecked, lost, stranded, or cast away upon the sea, or upon any reef, shoal, bank, or rocks of the sea, or in any place within the admiralty or maritime jurisdiction of the United States ; or if any person or persons shall wilfully obstruct the escape of any person endeavouring to save his or her life from such ship or vessel, boat or raft, or the wreck thereof; or if any person shall hold out or show any false light or lights, or extinguish any true light, with intention to bring any ship or vessel, boat or raft, being or sailing upon the sea, into danger or distress, or shipwreck; every person so offending, his or their counsellors, aiders or abettors, shall be deemed guilty of felony; and shall, on conviction thereof, be punished by a fine, not exceeding five thousand dollars, and imprisonment and confinement at hard labour, not exceeding ten years, according to the aggravation of the offence." 3 Story's Laws of the U. S. 2001. The indictment, as has been already stated, charges the offence to have been committed on Rockaway Beach; and as is admitted, above high water mark.

Before we proceed to the direct consideration of the true import and interpretation of this section, it seems highly important, if not indispensable, to say a few words as to the constitutional authority of congress to pass the same. For if, upon a just interpretation of the terms thereof, congress have exceeded their constitutional authority, it will become our duty to say so; and to certify our opinion on the points submitted to us, in favour of the defendant. On the other hand, if the section admits of two interpretations, each of which is within the constitutional authority of congress, that ought to be adopted,

[United States v. Coombs].

which best conforms to the terms and the objects manifested in the enactment, and the mischiefs which it was intended to remedy. And again, if the section admits of two interpretations, one of which brings it within, and the other presses it beyond the constitutional authority of congress, it will become our duty to adopt the former construction; because a presumption never ought to be indulged, that congress meant to exercise or usurp any unconstitutional authority, unless that conclusion is forced upon the Court by language altogether unambiguous. And, accordingly, the point has been presented to us under this aspect, in the argument of the attorney general, on behalf of the government.

There are two clauses of the constitution which may properly come under review, in examining the constitutional authority of congress over the subject matter of the section. One is, the delegation of the judicial power, which is declared to extend "to all cases of admiralty and maritime jurisdiction." The other is, the delegation of the power "to regulate commerce with foreign nations, and among the several states;" and, as connected with these, the power "to make all laws which shall be necessary and proper for carrying into execution the foregoing power," &c.

In regard to the first clause, the question which arises is, what is the true nature and extent of the admiralty jurisdiction. Does it, in cases where it is dependent upon locality, reach beyond high water mark? . Our opinion is, that in cases purely dependent upon the locality of the act done, it is limited to the sea, and to tide waters, as far as the tide flows; and that it does not reach beyond high water mark. It is the doctrine which has been repeatedly asserted by this Court; and we see no reason to depart from it. Mixed cases may arise, and indeed often do arise, where the acts and services done are of a mixed nature; as where salvage services are performed partly on tide waters, and partly on the shore, for the preservation of the property saved; in which the admiralty jurisdiction has been constantly exercised to the extent of decreeing salvage. That this is a rightful exercise of jurisdiction by our courts of admiralty, was assumed as the basis of much of the reasoning of this Court, in the case of the American Insurance Company v. Canter, 1 Peters' Rep. 511. It has also been asserted and enforced by Lord Stowell, on various occasions; and especially in the case of The Augusta v. Eugenie, 1 Hagg. Adm. Rep. 16; The Jonge Nicholas, 1 Hagg. Adm. Rep. 201; The Ranger, 2 Hagg. Adm. Rep. 42; and The Happy Return,

[United States v. Coombs.]

2 Hagg. Adm. Rep. 198. See also The Henry, of Philadelphia, 1 Hagg. Adm. Rep. 264; The Vesta, 2 Hagg. Adm. Rep. 189; The Salecia, 2 Hagg. Adm. Rep. 262. And this has been done, not only in conformity to the doctrines of the maritime law; but also to what has been held in the courts of common law. For it has been laid down, that if the libel is founded upon one single continued act, which was principally upon the sea, though a part was upon land; as if the mast of a ship be taken upon the sea, though it be afterwards brought ashore, no prohibition lies. Com. Dig. Adm. F. S.; 1 Rolle Adm. 533, C. 13; Com. Dig. Adm. E. 12. It is true, that it has been said that the admiralty has not jurisdiction of the wreck of the sea. 3 Black. Com. 106, 107. But we are to understand by this, not what, in the sense of the maritime and commercial law, is deemed wreck or shipwrecked property; but "wreck of the sea" in the purely technical sense of the common law; and constituting a royal franchise, and a part of the revenue of the crown in England; and often granted as such a royal franchise to lords of manors. How narrow and circumscribed this sort of wreck is, according to the modern doctrines of the courts of common law, may be perceived by the statement of it in Mr. Justice Blackstone's Commentaries. 1 Black. Com. 290 to 317. Who also shows, that it is this, and this only, which is excluded from the admiralty jurisdiction. Lord Stowell manifestly acted upon the same doctrine, in the case of The Augusta v. Eugenie, 1 Hagg. Adm. Rep. 17; 3 Black. Com. 106, 107.

A passage has been sometimes relied on, in one of the earliest judgments of Lord Stowell—the case of The Two Friends, 1 Rob. Rep. 271; in which it is intimated, that if the goods, which are subject to salvage, have been landed before the process of the admiralty court has been served upon them, the jurisdiction over them for the purposes of salvage may be gone. But his lordship, so far from deciding the point then, greatly doubted it; and has, as it should seem, since silently overruled the objection. Indeed, the supposed difficulty in that case was not that the instance court had not jurisdiction; but that in cases of salvage on the instance side of the court, no process of the court could be served on land, but only on the water. Now, this is wholly inapplicable to the courts of the United States, where admiralty process, both in the instance and prize sides of the court, can be served on land as well as on water. These explanations have been made, for the sake of clearing the case from some apparent obscurities and difficulties, as to the nature and extent of the admi-

ralty jurisdiction, in cases where it is limited by the locality of the acts done. In our judgment, the authority of congress, under this clause of the constitution, does not extend to punish offences committed above and beyond high water mark.

But we are of opinion, that, under the clause of the constitution giving power to congress "to regulate commerce with foreign nations, and among the several states," congress possessed the power to punish offences of the sort which are enumerated in the ninth section of the act of 1825, now under consideration. The power to regulate commerce, includes the power to regulate navigation, as connected with the commerce with foreign nations, and among the states. It was so held and decided by this Court, after the most deliberate consideration, in the case of Gibbons v. Ogden, 9 Wheat. 189 to 198. It does not stop at the mere boundary line of a state; nor is it confined to acts done on the water, or in the necessary course of the navigation thereof. It extends to such acts, done on land, which interfere with, obstruct, or prevent the due exercise of the power to regulate commerce and navigation with foreign nations, and among the states. Any offence which thus interferes with, obstructs, or prevents such commerce and navigation, though done on land, may be punished by congress, under its general authority to make all laws necessary and proper to execute their delegated constitutional powers. No one can doubt, that the various offences enumerated in the ninth section of the act, are all of a nature which tend essentially to obstruct, prevent, or destroy the due operations of commerce and navigation with foreign nations, and among the several states. Congress have, in a great variety of cases, acted upon this interpretation of the constitution, from the earliest period after the constitution; as will be abundantly seen by the punishment of certain offences on land, connected with piracies and felonies on the high seas, in the act of 1790, ch. 36, sec. 10 and see. 11; and in the acts for regulation of commerce and navigation, and for the collection of the revenue, passed from time to time: in which many of the penalties, forfeitures and offences provided for, are such as are, or may be done on land; and yet which arise from the power to regulate commerce and navigation, and to levy and collect duties. The ship registry act of 1792, ch. 45; the act of 1798, ch. 52, for the enrolment and licensing of vessels in the coasting trade and fisheries; the act of 1790, ch. 102, for the regulation and government of seamen in the merchants' service; and the revenue collection act, from the act of 1789, ch. 5, to

that of 1799, ch. 128, afford many pointed illustrations. We do not hesitate, therefore, to say, that in our judgment, the present section is perfectly within the constitutional authority of congress to enact; although the offence provided for may have been committed on land, and above high water mark.

Let us now proceed to the interpretation of the section under consideration. Does it mean, in the clause in which this indictment is founded, to prohibit and punish the plundering, stealing, or destroying of any property belonging to any vessel in distress, or wrecked, lost, stranded, or cast away; only when the same property is then on board of the vessel, or is then upon the sea, or upon any reef, shoal, bank, or rock of the sea, or in any other place within the admiralty and maritime jurisdiction of the United States? Or does it mean equally to prohibit and punish such plunder, stealing, or destroying of such property; whether the act be done on shore, or in any of the enumerated places below high water mark. In our opinion, the latter is the true interpretation of this clause of the section.

In the first place, this is the natural meaning of the words of the clause, taken in their actual import and connection. There is no absolute locality assigned to the offence. It is not said, as it is in every one of the preceding sections, that the offence shall be committed in a particular place; in a fort, dock-yard, navy yard, &c. &c., or upon the high seas, or in an arm of the sea, or in a river, &c., within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state. The language is, " If any person or person shall plunder, steal, or destroy any money, goods, merchandise, or other effects, from or belonging to any ship, or vessel, &c." The plundering, stealing, or destroying need not, then, be *from* any ship or vessel. It is sufficient if it be of property " belonging to any ship or vessel." It is no where stated that this property, belonging to any ship or vessel, shall be in any of the enumerated places when the offence is committed; but only that it shall be property belonging to the ship or vessel, which is in distress, or wrecked, lost, stranded, or cast away. Locality, then, is attached to the ship or vessel, and not to the property plundered, stolen, or destroyed. And this qualification is important, because it is manifest congress possess no authority to punish offences of this sort generally, when committed on land; but only to punish them when

connected with foreign trade and navigation, or with trade and navigation among the several states.

In the next place, the mischiefs intended to be suppressed by the section are precisely the same, whether the offence be committed on the shore, or below high water mark. There is, and there can be, no sound reason why congress should punish the offence when committed below high water mark, which would not apply equally to the offence when committed above high water mark. In such case, the wrong and injury to the owners, and to commerce and navigation, is the same; and the public policy of affording complete protection to property, commerce, and navigation, against lawless and unprincipled freebooters, is also in each case the same. There is, then, no reason, founded in the language or policy of the clause, to insert a restriction and locality which have not been expressed by the legislature. On the contrary, upon general principles of interpretation, where the words are general, the Court are not at liberty to insert limitations not called for by the sense, or the objects, or the mischiefs of the enactment.

In the next place, the succeding clauses of the same section greatly aid and fortify this construction; for in neither of them is there any locality given to the offences therein stated; and indeed, any locality would seem inconsistent with the professed objects of these clauses. Thus, in the next clause, it is provided that, "if any person or persons shall wilfully obstruct the escape of any person endeavouring to save his or her life, from such ship or vessel, &c.," he shall be punished in the manner provided for in the section. Now, it is plain that this obstruction may be as well by an act done on shore, as by an act done below high water mark. It may be by cutting a rope, or hawser, or other thing used as a means of escape, and fastened to the shore; or by removing a plank affixed at one end to the shore; or by striking or wounding a person on his arrival at the shore; or by intimidating him from landing, by threatening to fire on him on landing, or otherwise, by attempting, on shore, to prevent him from saving his life. But the remaining clause is still more direct. It provides for the case of holding out or showing a false light, or extinguishing a true light, with the intention to bring any ship or vessel, &c., sailing upon the sea, into danger, or distress, or shipwreck. Now, it is most manifest that these acts are such as ordinarily are done, and contemplated to be done on land. We do not say contemplated, exclusively, to be done on land; for they may be done on

the sea. But to suppose that congress could intend to punish these acts only when done on the sea, and not to punish them when committed on shore, would be to suppose that they were solicitous to punish acts of possible and rare occurrence only; and to leave unpunished those which would be of the most frequent and constant occurrence, for such inhuman purposes; and most mischievous in their consequences.

If, then, the other clauses of the same section defining offences of a kindred nature, have no reference whatever to any locality, but indifferently apply to the same offence, whether committed on land or on the sea; and if (as is the fact) all these clauses are connected together, and must be read together, in order to arrive at the denunciation of the punishment which is equally applied to all; there does seem to us to be very strong reason to believe that congress, throughout the whole enactment, had the same intent: an intent to punish all the enumerated offences, whether committed on land or on tide waters; because they were equally within the same mischief, and the prohibitions equally necessary to the protection of the commerce and navigation of the United States.

It has been suggested, that there is not the same necessity for the interposition of congress in the case of the offence contained in the present indictment, when committed on land, as when committed on the sea, or in other places within the admiralty and maritime jurisdiction of the United States; because, when committed on land, the offence is, or may be, cognizable by the state judicatories, under the state laws. But this reasoning is equally applicable to the other offences enumerated in the other clauses of the same section; and yet it can hardly be doubted that they were designed to be punished when committed on land. And it may be further suggested, that it could scarcely be deemed prudent or satisfactory wholly to rely upon state legislatures or state laws, for the protection of rights and interests specially confided by the constitution to the authority of congress.

Independently, however, of these considerations, there are others, which ought to have great weight; and, in our opinion, decisive influence in a question like the present. In the first place, the act of 1825, ch. 276, manifestly contemplates, that in some of the offences enumerated in it, the state courts would or might have a concurrent jurisdiction; for the 23d section of the act expressly provides, "that nothing in this act contained shall be construed to deprive the courts

[United States v. Coombs.]

of the individual states of jurisdiction, under the laws of the several
states, over offences made punishable by this act." Now, there are
no other sections in the act, to which this last section can more per-
tinently apply than to offences committed on land, within the ninth
section. It does, indeed, apply with equal force to the 23d section
of the act, (which is also derived from the power to regulate com-
merce,) which provides for the punishment of conspiracies, combi-
nations, and confederacies, "on the high seas, or within the United
States," to cast away, burn, or otherwise destroy any ship or vessel,
for the fraudulent purposes stated in the section; and also affixes a
like punishment to the building or fitting out, aiding in the building
or fitting out, "within the United States," of any ship or vessel,
with intent that the same shall be cast away, burnt, or destroyed for
the like purpose.

In the next place, it is a most important consideration, that in cases
of shipwreck there must always be great practical difficulties in ascer-
taining the precise place, whether below or above high water mark,
where the property is first plundered, stolen or destroyed; as well as
by direct evidence to identify the particular persons by whom the
offence was committed. These dreadful calamities usually occur upon
coasts, and in places where the officers and crew are total strangers to
all the inhabitants. The personal sufferings of the officers and crew,
often disable them from making any efforts, or giving any care or aid
in the preservation of the property. The hurry and confusion inci-
dent to such events, make them intent upon consulting their own
safety, and often absorb all their thoughts. The darkness of the night,
as well as the perils of the weather, often compel them to forego all
resistance to the depredators; and the latter often assemble in numbers
so large as to make opposition hopeless, and identification of indivi-
duals and of packages impracticable. While some are on the waves
bringing the plunder to the shore; others are or may be on the shore
stationed to guard and secure the booty. Under such circumstances,
if the jurisdiction of the courts of the United States were limited to
acts of depredation or destruction, committed below high water mark.
the enactment would become practically almost a dead letter; for in
most cases it would be impossible to establish, by direct proof, that the
property was taken below high water mark. A prosecution in the
state court would, in many cases, be equally liable to a failure, from
the utter impossibility of establishing whether the act was not com-
mitted within the admiralty and maritime jurisdiction of the United

[United States v. Coombs.]

States. The wisdom of the enactment, therefore, which, upon a prosecution in the courts of the United States, should cut off any defence founded upon the mere absence of such proof where the offence was committed, would seem to be as clear as its policy is obvious. It could scarcely escape the attention of the legislature as indispensable for the due administration of public justice. And so far from wondering that the section in question does not contain any restriction as to locality of the offence, the surprise would have been great, if it had been found there. We think ourselves justified in saying, that upon the true interpretation of the section, it contains no such restriction: and that there is no ground, in constitutional authority, in public policy, or in the nature or object of the section, which call upon us to insert any.

Upon the whole our opinion is, that it be certified to the circuit court for the southern district of New York, that the offence committed was within the jurisdiction of that court.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the southern district of New York, and on the question and point on which the judges of the said court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of congress, in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this Court, upon the point which has been certified to this Court, by the said circuit court, that the said offence so committed, was within the jurisdiction of the said circuit court; and it is ordered and adjudged, that this opinion be certified to the said circuit court accordingly.