## TREVOR v. THE STEAMBOAT AD. HINE.

1. Jurisdiction: MARITIME TORTS. The jurisdiction of the admiralty courts of the United States is not exclusive in all cases of maritime torts.

2. —— FLOW OF THE TIDE. A cause of action arising on a navigable river, and not within the flow of the tide, was not within the admiralty jurisdiction of the courts of the United States, under the Judiciary Act of 1789.

3. —— CONCURRENT JURISDICTION. Under the act of Congress of February 26, 1845, the State courts have concurrent jurisdiction with the admiralty

courts of the United States of maritime torts on navigable rivers, where one of the parties is a steamer or other vessel employed in the commerce or the navigation of such river.

4. —— PLEADING: AVERMENTS. The State courts will not assume that a a cause is within the exclusive jurisdiction of the United States courts, when the facts essential to such jurisdiction are not alleged in the pleadings.

*Appeal from Scott District Court.*

MONDAY, DECEMBER 5.

THIS SUIT was brought to recover damages resulting from the steamboat "Ad. Hine" running against the steamboat "Sunshine" (owned by plaintiff), in the Mississippi, at St. Louis. The proceedings were had under chapter 148 of the Revision, and an attachment was issued, the boat seized, a bond given for its discharge as therein provided. At the appearance term, the defendant moved to dismiss the suit, because it was a proceeding against the boat for a marine tort alleged to have been committed on the Mississippi river, and the United States courts have exclusive jurisdiction thereof. This motion was overruled, and defendant duly excepted. The defendant then demurred for the same cause, which was also overruled and excepted to. The answer in specific denial was then filed, and trial was had by the court without a jury; and after the evidence was closed, the defendant again moved to dismiss, for the same reason, which was likewise overruled and excepted to. The court found for plaintiff for $1,106$\frac{99}{100}$, damages; and thereupon defendant moved for a new trial for the same cause, which was overruled, and judgment entered for the amount; from which defendant appeals.

*Grant & Smith* for the appellant.

*Cook & Drury* for the appellee.

COLE, J.—The sole question presented in this case, both by the record and the assignment of error, is this: Is the jurisdiction of the admiralty courts of the United States exclusive in all cases of maritime torts? The Constitution of the United States, art. 3, § 2, provides, that " the judicial power shall extend to all cases in law and equity arising under this Constitution, the laws of the United States and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction." * * * *

1. JURISDIC-
TION : mari-
time torts.

Our statute (Revision, ch. 148) has expressly provided that suits may be brought in the State courts against boats for many causes, and among them maritime torts, under the language: " § 3693, subd. 3. For all injuries to person, or property by such boat, or by the officers or crew, done in connection with the business of said boat." The question in this case, therefore, involves also the constitutionality of our statute, at least so far as the right to sue for that class of torts is concerned.

The question presented in this case is an important one, and has never received a direct adjudication in this court; and although many cases have been before this court, involving the liability for maritime torts and other matters cognizable in admiralty courts, under our statute, *supra*, and others similar thereto, and have received careful consideration and determination upon their merits, the question has never been directly made or determined. *Steamboat "Kentucky"* v. *Hine*, 1 G. Greene, 379; *Steamboat "Kentucky"* v. *Brooks*, Id., 398; *Newcomb* v. *Steamboat "Clermont,"* 3 Id., 295; *Miller* v. *Galland*, 4 Id., 191; *Ham* v. *Steamboat "Hamburg,"* 2 Iowa, 460; *Haight & Bro.* v. *Steamboat "Henrietta,"* 4 Id., 472; *Russ et ux.* v. *Steamboat War Eagle*, 9 Id., 374; *S. C.*, 14 Id., 363. In the last case, it is true, that after the cause was decided and opinion filed, original

counsel for the appellant presented a petition for rehearing, and one of the points made by the petition was as to the jurisdiction as made in the case, but the question had not before been made in the case, and the petition was over-ruled on other grounds than the merits of that question, which were not determined.   Other State courts have entertained causes based upon maritime transactions, either torts or contracts, in many of which no question as to jurisdiction was ever made, but in all of which the jurisdiction was recognized as existing in the State courts and was exercised by them.   *German* v. *Steamtug " Indiana*," 11 Ill.; 535; *Steamboat " United States"* v. *The Mayor*, &c., *St. Louis*, 5 Mo., 230; *Steamboat " Western Belle"* v. *Wagner*, 11 Id., 30; *Logan* v. *Steamboat " Clipper*," 18 Ohio, 375; *Thompson* v. *Steamboat " Julius D. Morton*," 2 Ohio St., 26; *Keating* v. *Spink*, 3 Id., 105; *The Richmond Turnpike Company* v. *Vanderbilt*, 1 Hill, 480; *Barnes* v. *Cole*, 21 Wend., 188; *Percivals* v. *Hickey*, 18 Johns., 256.

· But the question involves the construction of the Constitution of the United States, and the acts of Congress passed thereunder; and hence the propriety of looking, as we do, to the construction given by the Supreme Court of the United States, which is the ultimate tribunal for the determination of such questions, and by whose construction we are bound.   The jurisdiction of admiralty courts attaches, either by reason of the subject matter or locality.   As to what locality was intended by the framers of the Constitution by the expression, " all cases of admiralty and maritime jurisdiction," has been a subject of much controversy.   On the one hand, it was claimed that the language of the Constitution was intended to embrace just that, and that only, which was the subject of admiralty and maritime jurisdiction in England at the time of the separation of the colonies from the mother country.   While, on the other hand, it was claimed that

2. —— Flow of the tide.

the Constitution intended to embrace all matters which had been the subject of that jurisdiction under the colonial commissions therefor.

Still further difficulties were found in determining the precise extent of the jurisdiction as exercised by the courts in England. In the case of *Waring et al.* v. *Clarke*, 5 How. (U. S.), 456, the question of jurisdiction (as to locality) of the admiralty courts in this country, underwent a thorough examination. It was a case of collision in the lower Mississippi, within the ebb and flow of the tide, and a majority of the court held, per WAYNE, J., that the admiralty jurisdiction of the courts of the United States, extends to tide waters, as far as the tide flows, though that may be *infra corpus comitatus*, WOODBURY, GRIER and DANIEL, JJ., dissenting. That court had previously held, in *United States* v. *Coombs*, 12 Peters, 72, where the question certified to the court directly involved, what was the admiralty jurisdiction, under the grant of "all cases of admiralty and maritime jurisdiction," that, "the question which arises is, what is the true nature and extent of the admiralty jurisdiction? Does it, in cases where it is dependent upon locality, reach beyond high water mark? Our opinion is, that in cases purely dependent upon locality of the act done, it is limited to the sea and to tide waters as far as the tide flows, and that it does not reach beyond high water mark. It is the doctrine which has been repeatedly asserted by this court, and we see no reason to depart from it." *Peyroux et al.* v. *Howard & Varion*, 7 Pet., 342; *Steamboat Orleans* v. *Phœbus*, 11 Id., 175; *Steamboat Thomas Jefferson, Johnson et al. claimants*, 10 Wheat., 428.

The case of *Waring et al.* v. *Clarke, supra*, was decided at the December Term, 1846, although the case, as well as the others cited *supra*, arose under the Judiciary Act of 1789, which invests the federal courts with *exclusive* cognizance of all civil causes of admiralty and maritime

jurisdiction, but *expressly* " saves to suitors in all cases the right of a common law remedy, where the common law is competent to give it." Under the Judiciary Act of 1789, the doctrine held by the majority in the case of *Waring et al. v. Clarke*, *supra*, was the most liberal construction of maritime jurisdiction ever given in this country : WOOD-BURY, DANIEL and GRIER, JJ., dissenting from that liberal construction, and holding that the jurisdiction did not extend to creeks, bays, &c., within the ebb and flow of the tide, when such ebb and flow was within the body of any county in a State. Thus, as the law was adjudicated under the Constitution and Judiciary Act of 1789, it is clear that this case was not within the admiralty and maritime jurisdiction of the courts of the United States, since the cause of action did not arise within the ebb and flow of the tide. An act of congress, however, was passed February 26th, 1845, extending the admiralty forms of remedy in the federal courts " to certain cases upon the lakes and navigable waters connecting the same." The concluding paragraph of this act contains the following express provision : " Saving to the parties the right of a concurrent remedy at the common law, where it is competent to give it, *and any concurrent remedy which may be given by the State laws*, where such steamer or other vessel is employed in such business of commerce and navigation." In the case of *The Genessee Chief* v. *Fitzhugh et al.*, 12 Howard, 443, the Supreme Court of the United States held this act to be constitutional. The court, however, expressly say that its constitutionality cannot be based upon the " power to regulate commerce," but that " it must be supported on the ground that the lakes and navigable waters connecting them are within the scope of admiralty and maritime jurisdiction, as known and understood in the United States when the Constitution was adopted." But in holding the law constitutional on

3. ——
Concurrent
jurisdic-
tion.

.this ground, the court was forced to, and did expressly, overrule the cases in 10, 11 and 12 Peters, and 5 Howard, *supra.* The holding of this act as constitutional, and the overruling of the cases cited, does not, however, aid the appellant in this case, since this case is within the express exception of the statute, making the jurisdiction of the federal courts concurrent with and not exclusive of the State courts.

Again, even without the exception in the act of February 26th, 1845, *supra,* the claim of the appellant in this case, will be found equally groundless. It will be remembered that the Judiciary Act of 1789 makes the jurisdiction of the federal courts under it, "exclusive," while the act of February 26th, 1845, does not, and it is a well settled doctrine, that even in maritime matters, where the common law is competent to give a remedy in the State courts, they may exercise concurrent jurisdiction over them. Judge STORY, in his Commentaries on the Constitution (vol. 3, § 1666), says, "so that we see, that the admiralty jurisdiction naturally connects itself on the one hand with our diplomatic relations and duties to foreign nations and their subjects; and on the other hand, with the great interests of navigation and commerce, foreign and domestic. * * * * It may be added that, in many of the cases included in these latter classes, the same reasons do not exist, as in cases of prize for an exclusive jurisdiction; and, therefore, whenever the common law is competent to give a remedy in the State courts, they may retain their accustomed concurrent jurisdiction in the administration of it." And, in a note to this section, it is said, "Mr. Chancellor KENT and Mr. RAWLE, seem to think that the admiralty jurisdiction, given by the Constitution, is in all cases necessarily exclusive, but it is believed that this opinion is founded in a mistake. It is exclusive in all matters of prize, for the reason that at the common law this jurisdic-

Trevor v. the Steamboat Ad. Hine.

tion is vested in the courts of admiralty, to the exclusion of the courts of common law. But in cases where the jurisdiction of the courts of common law and the admiralty are concurrent (as in cases of possessory suits, mariner's wages and *marine torts*), there is nothing in the Constitution necessarily leading to the conclusion, that the jurisdiction was intended to be exclusive; and there is as little ground upon general reasoning to contend for it. * * * * " This view is ably vindicated in the well considered case of *Taylor et al.* v. *Carryl*, 20 How. (U. S.), 583; and in this case it was held, that where the State court acquired jurisdiction by first seizing the property, such jurisdiction became thereby exclusive, and the United States courts could not again seize the same property. *Percival* v. *Hickey*, 18 Johns., 256; *Thompson* v. *Steamboat Julius D. Morton*, 2 Ohio S., 26; *Keating* v. *Spink*, 3 Id., 105.

Another view of the case which seems to us very legitimate, is, that our statute under which this proceeding is had, was designed to afford to a party having a claim of any of the classes named against individuals, a remedy whereby he might secure the payment thereof, after judgment, by attaching the boat and holding it subject to the satisfaction of such judgment when obtained. In this view, the statute affords a mere personal remedy, and is simply an extension of the attachment process to that class of property for any of the causes of action named in the statute, and is, therefore, no more a matter of admiralty or maritime jurisdiction proper than would be the seizure of a horse or other personal property by attachment, when crossing a creek, river or bay within the ebb and flow of the tide. And, finally, the act of February 26, 1845, under which alone the defendant can claim the courts of the United States have jurisdiction of this case, provides "that the District Courts of the United States

4. PLEAD-
INGS:
averments.

shall have, possess and exercise the same jurisdiction in matters of contract and tort, arising in, upon or concerning steamboats and other vessels of twenty tons burden and upwards, enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation between ports and places in different States and territories, upon the lakes and navigable waters connecting said lakes, as is now possessed and exercised by the said courts in cases of the like steamboats and other vessels employed in navigation and commerce upon the high seas or tide waters within the admiralty and maritime jurisdiction of the United States." * * * *

Now, it is a well settled rule of practice in the United States courts, that the pleader must, by averment of facts, show affirmatively in his pleading, that his cause of action or defense is within the jurisdiction of such court. Certainly a less showing would not be sufficient to justify a State court in refusing to exercise jurisdiction, because such jurisdiction properly belonged to a United States court, than would be required for the latter court to take jurisdiction primarily.

By reference to the pleadings in this case, it will be seen that it does not appear therefrom that the vessel was of twenty tons burden or upwards, or that it was enrolled and licensed, or that, at the time of the act done, it was employed in the business of commerce and navigation between ports and places in different States and territories upon the lakes and navigable waters connecting said lakes, nor any other jurisdictional fact necessary to show jurisdiction in the United States courts. Whatever, therefore, might be the rule in any given case, it is clear, beyond controversy, that the defendant has not shown this case to be within the maritime jurisdiction of a United States court. The judgment is therefore

Affirmed.