SHEDD, Circuit Judge,
concurring in part and dissenting in part:
Quentin McLean, a Virginia inmate and frequent litigant, filed this civil rights case against the United States of America and the United States Congress, asserting that a provision of AEDPA is unconstitutional. The district court dismissed the complaint under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. As the majority’s summary disposition of the merits of McLean’s appeal illustrates, the district court clearly did not err in dismissing the complaint. Thus, to the extent that we reach the merits of the appeal, I agree that the district court’s order should be affirmed. However, I disagree with the majority’s holding that McLean is not a “three striker” under 28 U.S.C. § 1915(g). In my view, this holding, which flows from the majority’s conclusion that prisoner cases that are dismissed without prejudice for failure to state a claim do not count as “strikes” under § 1915(g), is based on an incorrect reading of the statute. Consistent with the opinions of other circuit courts, I believe the most natural way to read § 1915(g) is to read it as it is written, and the statute on its face does not limit its scope only to dismissals with prejudice.
I
Ordinarily, litigants must pay $350 to file a civil complaint in a federal district court and $450 to file a notice of appeal in a federal court of appeals. See 28 U.S.C. §§ 1913 note (“Court of Appeals Miscellaneous Fee Schedule”), 1914(a). Notwithstanding this fact, “Congress has long regulated the access of indigent litigants to the federal judicial system,” Roller v. Gunn, 107 F.3d 227, 230 (4th Cir.1997), and it has authorized the district and circuit courts to waive the fees for most individuals who are unable to afford them by granting in forma pauperis (“IFP”) status. Specifically, Congress enacted the IFP statute, now codified as 28 U.S.C. § 1915, “to ensure that indigent litigants have meaningful access to the federal courts.” Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). However, “there is no absolute ‘right’ to IFP status,” Altizer v. Deeds, 191 F.3d 540, 545 (4th Cir.1999), and “Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them,” Roller, 107 F.3d at 231.
Congress originally believed that the IFP statute would not lead to a rise in vexatious litigation, but over time “the statute’s noble purpose has been threatened by a flood of merit-less lawsuits.” Id. at 230. “Unsurprisingly, prisoners proved responsible for much of this litigation.” Id. As the Supreme Court recently noted:
Prisoner litigation continues to “account for an outsized share of filings” in federal district courts. In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous.
Jones v. Bock, 549 U.S. 199, 203, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (quoting Woodford v. Ngo, 548 U.S. 81, 94 n. 4, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). Although our legal system “remains committed to guaranteeing that prisoner claims *403 ... are fairly handled according to law,” the “challenge lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit,” Jones, 549 U.S. at 203, 127 S.Ct. 910.
“Finding that the proliferation of prisoner litigation was due significantly to the lack of economic disincentives to filing meritless cases,” Roller, 107 F.3d at 230-31, “Congress addressed that challenge in the PLRA [Prison Litigation Reform Act],” by enacting “a variety of reforms designed to filter out the bad claims and facilitate consideration of the good,” Jones, 549 U.S. at 203-04, 127 S.Ct. 910. Simply put, Congress decided that “[w]hat this country needs ... is fewer and better prisoner suits,” id. at 203, 127 S.Ct. 910, and the PLRA’s “focus is to limit litigation brought by prisoners,” Montcalm Pub. Corp. v. Commonwealth of Va., 199 F.3d 168, 171 (4th Cir.1999), and “to remove the federal district courts from the business of supervising the day-to-day operation of state prisons,” Cagle v. Hutto, 177 F.3d 253, 257 (4th Cir.1999).
To effect its purpose, the PLRA “imposes some rather substantial limitations on a prisoner’s ability to initiate a civil action,” Green v. Young, 454 F.3d 405, 406 (4th Cir.2006), and it “contains provisions that should discourage prisoners from filing claims that are unlikely to succeed,” Crawford-El v. Britton, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). As we have noted: “Many sections of the PLRA are simply amendments to the IFP statute .... ” Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 682 n. 4 (4th Cir.2005).
For example, “[p]rior to the enactment of the PLRA, prisoners were able to use the in forma pauperis statute to avoid paying filing fees.” Green, 454 F.3d at 407. This practice “risked encouraging suits that these fees might otherwise have deterred.” Nagy v. EMC Butner, 376 F.3d 252, 255 (4th Cir.2004). The PLRA amended § 1915 to require prisoners to pay the full filing fee, and now “IFP status simply allows a prisoner to pay the filing fee in installments.” Altizer, 191 F.3d at 544 (addressing § 1915(b)).[1] Rejecting a constitutional challenge to this aspect of the PLRA, we commented:
Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system. If a prisoner determines that his funds are better spent on other items rather than filing a civil rights suit, “he has demonstrated an implied evaluation of that suit” that the courts should be entitled to honor.
Roller, 107 F.3d at 233 (quoting Lumbert v. Illinois Dept. of Corrections, 827 F.2d 257, 260 (7th Cir.1987)).
The PLRA also created § 1915(g), which is the “three strikes” provision now at issue. Section 1915(g) provides:
In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or ap *404 peal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
We have noted that § 1915(g) “does little more than apply the same rules to prisoners that apply to everyone else who brings an action or appeal.” Altizer, 191 F.3d at 546. In other words:
Although section 1915(g) attaches consequences to past actions, ... [it] does not affect a prisoner’s substantive rights, and it does not block his or her access to the courts. A prisoner may still pursue any claim after three qualifying dismissals, but he or she must do so without the aid of the [IFP] procedures.
Id. at 546 n. 11 (quoting Adepegba v. Hammons, 103 F.3d 383, 386 (5th Cir.1996)).[2]
Additionally, the PLRA increases the obligation of federal courts to dismiss certain prisoner litigation. “Before the PLRA, the in forma pauperis provision of § 1915 [then codified at 28 U.S.C. § 1915(d)], applicable to most prisoner litigation, permitted sua sponte dismissal only if an action was frivolous or malicious.” Jones, 549 U.S. at 214, 127 S.Ct. 910.[3] However, the PLRA amended § 1915(d), and recodified it as § 1915(e)(2)(B), by adding (among other things) that the courts should dismiss an IFP action that “fails to state a claim on which relief may be granted.”
Similarly, the PLRA also created two additional provisions authorizing the summary dismissal of prisoner litigation regardless of whether the prisoner seeks to proceed IFP. First, the PLRA created § 1915A, which in pertinent part requires the district court “before docketing, if feasible or, in any event, as soon as practicable after docketing” to (1) screen “a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity” and (2) dismiss such a complaint or any portion thereof that is “frivolous, malicious, or fails to state a claim upon which relief may be granted.” Second, the PLRA created 42 U.S.C. § 1997e(c)(l),[4] which in pertinent part requires the district court “on its own motion or on the motion of a party” to dismiss any action brought with respect to prison conditions under federal law by a prisoner confined in any jail, prison, or other correctional facility “if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted.”
Each of these “separate, but interrelated” PLRA provisions, O’Neal v. Price, 531 F.3d 1146, 1152 (9th Cir.2008), instructs courts to “dismiss” actions on the three grounds that constitute “strikes” under § 1915(g) (ie., frivolous, malicious, fails to state a claim). Because of their obvious similarity, courts may have the option in a particular case of dismissing IFP prisoner litigation for failure to state a claim under more than one of these provisions. See, e.g., Michau v. Charleston County, S. C., 434 F.3d 725 (4th Cir.2006) (in holding that the district court erred in summarily dismissing the plaintiffs complaints for failure to state a *405 claim under § 1915A because the IFP litigant was not a “prisoner,” we nonetheless affirmed the dismissals because the district court had also relied on § 1915(e)(2)(B)). Generally speaking, a dismissal under any of these provisions, as well as under Federal Rule of Civil Procedure 12(b)(6), would qualify as a “strike” under § 1915(g).
As we have noted: “The overriding goal in policing in forma pauperis complaints is to ensure that the deferred payment mechanism of § 1915(b) does not subsidize suits that prepaid administrative costs would otherwise have deterred.” Nagy, 376 F.3d at 257. In amending § 1915(d), and in creating §§ 1915(g), 1915A(b)(1), and 1997e(c)(l), Congress clearly viewed dismissal for failure to state a claim as an important part of its efforts to curb the number of meritless prisoner lawsuits. Cf. Green, 454 F.3d at 408 (“Before the PLRA was enacted, no exhaustion requirement applied to § 1983 actions. By imposing an exhaustion requirement on actions by prisoners challenging the conditions of their confinement, Congress clearly viewed exhaustion as an important part of its efforts to curb the number of frivolous lawsuits brought by prisoners.” (citations omitted)).[5]
II
The specific issue that we have raised in this appeal sua sponte is whether a dismissal without prejudice for failure to state a claim counts as a strike under § 1915(g).[6] This is a matter of statutory construction. See Green, 454 F.3d at 408. Using common sense as a guide, Kofa v. I.N.S., 60 F.3d 1084, 1088 (4th Cir.1995) (en banc), “[o]ur first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case,” Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). We determine the “plainness or ambiguity of statutory language ... by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole,” id. at 341, 117 5. Ct. 843, and “we ordinarily resist reading words ... into a statute that do not appear on its face,” Dean v. United States, — U.S. —, 129 S.Ct. 1849, 1851, 173 L.Ed.2d 785 (2009) (internal quotation marks omitted). “Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.” Robinson, 519 U.S. at 340, 117 S.Ct. 843 (internal quotation marks omitted).
A.
We have not previously addressed this issue in a published opinion, but other circuit courts have held that dismissals without prejudice count as strikes under § 1915(g). See, e.g., O’Neal, 531 F.3d at 1154 (“Because § 1915(g) of the current PLRA does not distinguish between dismissals with and without prejudice, [prior § 1915(d) precedent] does not detract from *406 the conclusion that a dismissal without prejudice may count as a strike.”); Day v. Maynard, 200 F.3d 665 (10th Cir.1999) (stating that “a dismissal without prejudice counts as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim.”). We have held similarly, albeit in non-precedential unpublished opinions. See Vaughan v. Watts, 305 Fed.Appx. 958, 958-59 (4th Cir.2009) (noting that the district court’s § 1915A dismissal without prejudice for failure to state a claim constituted the prisoner’s third strike under § 1915(g)); Ballenger v. Norton, 238 Fed. Appx. 974, 975 (4th Cir.2007), cert. denied, — U.S. —, 128 S.Ct. 1476, 170 L.Ed.2d 299 (2008) (affirming the district court’s § 1915A order that both dismissed without prejudice the complaint for failure to state a claim and deemed the case a strike under § 1915(g)).
In Green, we did consider and address the issue of whether a “routine dismissal” under § 1997e(a) for failure to exhaust administrative remedies constitutes a strike for purposes of § 1915(g). We held that such a dismissal does not constitute a strike, reasoning that “[bjecause a dismissal for failure to exhaust is not listed in § 1915(g), it would be improper for us to read it into the statute.” 454 F.3d at 409.
In Nagy, although we did not consider what constitutes a strike under § 1915(g), we did address the meaning of the unqualified word “dismiss” as it is used in § 1915(e)(2)(B)®, pursuant to which the district court had dismissed a prisoner’s IFP complaint as frivolous. On appeal, the prisoner argued that the district court erred by considering the amount sought by the prisoner in determining whether the claim was frivolous. We rejected the prisoner’s argument and affirmed the dismissal. Notably, we stated that we did not think “that Congress intended a dismissal under § 1915(e)(2)(B)® of the in forma pauperis statute to operate as a dismissal with prejudice.” 376 F.3d at 258. Therefore, we held that the prisoner “remain[ed] free to file a paid complaint with these same allegations.” Id. (emphasis added).
B.
Section 1915(g) plainly does not distinguish between dismissals with and without prejudice. Rather, it mandates that absent imminent danger, a prisoner may not file, or appeal a judgment in, a civil action under the IFP statute “if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted....” Notwithstanding § 1915(g)’s silence regarding “prejudice,” the majority reads it as unambiguously limiting the unqualified word “dismissed” when coupled with the phrase “fails to state claim upon which relief may be granted” to mean “dismissed with prejudice.”[7]
The majority grounds this reading on its view that “the complete phrase has a well-established legal meaning” that Congress presumably incorporated into § 1915(g). Majority Op., at 396. For support, the majority notes that the “failure to state a claim” ground in § 1915(g) is patterned after Federal Rule of Civil Procedure *407 12(b)(6) and unless otherwise specified, courts presume that a Rule 12(b)(6) dismissal for failure to state a claim is “both a judgment on the merits and ... rendered with prejudice.” Majority Op., at 396. From this, the majority observes that “[i]t follows that the type of prior dismissal for failure to state a claim contemplated by § 1915(g) is one that constituted an adjudication on the merits and prejudiced the filing of a subsequent complaint with the same allegations.” Majority Op., at 396. Because a Rule 12(b)(6) dismissal without prejudice is not an adjudication on the merits, the majority concludes that it does not fall within § 1915(g) and, consequently, does not count as a strike.
In general usage, there is unquestionably a distinction between dismissals with and without prejudice, but the issue before us is whether the plain language of § 1915(g) makes the distinction relevant. A dismissal with prejudice “is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties.” Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530, 534 (4th Cir.1991) (citation and punctuation omitted). Conversely, a dismissal without prejudice “operates to leave the parties as if no action had been brought at all.” Dove v. CODESCO, 569 F.2d 807, 809 n. 3 (4th Cir.1978). Despite this distinction, which really pertains only to “claim preclusion and issue preclusion, ... collectively referred to as ‘res judicata,’ ” Taylor v. Sturgell, — U.S. —, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008), both types of dismissal share one important characteristic: the termination of the specific action (or claim), see, e.g., United States v. California, 507 U.S. 746, 756, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993) (“A dismissal without prejudice terminates the action and concludes the rights of the parties in that particular action.”) (citation and punctuation omitted). Moreover, a district court ordinarily has discretion to decide whether to dismiss an action, including for failure to state a claim, with or without prejudice. Carter v. Norfolk Comm. Hosp. Ass’n, 761 F.2d 970, 974 (4th Cir.1985); see also Payne v. Brake, 439 F.3d 198, 204 (4th Cir.2006).
Thus, dismissals with and without prejudice for failure to state a claim for relief are two distinct types of “dismissals,” but they operate to achieve the same result for purposes of a specific civil case. Congress undoubtedly was aware of this fact when it used the unqualified word “dismissed” in § 1915(g). See Keene Corp. v. United States, 508 U.S. 200, 212, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (noting that “we apply the presumption that Congress was aware of these earlier judicial interpretations and, in effect, adopted them”). Based on the plain language of § 1915(g), which draws no distinction between the two well-established types of dismissals for failure to state a claim for relief, the most natural way to read the unqualified word “dismissed” is that it encompasses both types. Although the majority reads the word “dismissed” as actually stating “dismissed with prejudice,” we simply are not at liberty to add those limiting words to the statute. See, e.g., 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States, 340 U.S. 593, 596, 71 S.Ct. 515, 95 L.Ed. 566 (1951) (“[0]ur problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain — neither to add nor to subtract, neither to delete nor to distort.”); United States v. Coombs, 37 U.S. 72, 80, 12 Pet. 72, 9 L.Ed. 1004 (1838) (noting that “upon general principles of interpretation, where the words are general, the Court [is] not at liberty to insert limitations not called for by the sense, or the objects, or the mischiefs of the enactment”). As the Ninth *408 Circuit stated in O’Neal: “If Congress had intended to limit strikes to dismissals with prejudice, it could have said so.” 531 F.3d at 1154 n. 9; see also Jama v. Immigration and Customs Enforc., 543 U.S. 335, 341, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) (“We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply.”).
The majority is correct that courts ordinarily construe unqualified orders of dismissal for failure to state a claim for relief as being with prejudice. Federal Rule of Civil Procedure 41(b), which “sets forth ... a default rule for determining the import of [an involuntary] dismissal,” Semtek Int'l. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 503, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), mandates such a construction. However, there is no indication that Congress intended that principle of construction to apply beyond the specific context of the rule itself, and certainly not to § 1915(g). Indeed, it is notable that although Rule 12 (upon which the majority relies) is actually silent on the question of prejudice, Rule 41 expressly differentiates between dismissals with and without prejudice. Congress does not enact the Federal Rules of Civil Procedure, but it does participate in the rulemaking process. Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 552, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). To the extent that Congress was involved in the creation of Rule 41, it expressly recognized the difference between dismissals with and without prejudice, and this fact makes clear that when Congress intends to distinguish between the types of dismissals, it does so expressly. Congress plainly did not do so in enacting § 1915(g).[8]
C.
Although the plain language of § 1915(g) resolves this case, I note as a practical matter that district courts often dismiss prisoner cases — including those that wholly lack merit — for failure to state a claim without prejudice simply to avoid burdening the prisoner with potential res judicata implications that a dismissal with prejudice may cause. See, e.g., De’Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir.2003) (noting that the district court found that it was unable to conceive of any set of facts that would entitle the plaintiff to relief, but it nonetheless dismissed the complaint without prejudice under § 1915(e)(2)(B) to avoid “complicating any future actions with issues of collateral estoppel or claim preclusion”). Under the majority’s view, those types of cases do not count as strikes under § 1915(g) for the simple reason that the district court exercised its discretion in a manner to benefit the prisoner by eliminating a subsequent res judicata challenge.
This can lead to a particularly curious result given our rules concerning appellate jurisdiction and dismissals without prejudice. Although an order dismissing a complaint without prejudice is generally not final and appealable, such an order is final and appealable if the grounds for dismissal clearly indicate that the plaintiff could not amend the complaint to cure the defects that warranted the dismissal. Domino Sugar Corp. v. Sugar Workers Local Union 392, 10 F.3d 1064, 1066-67 (4th Cir. *409 1993). We must “examine the appealability of a dismissal without prejudice based on the specific facts of the case in order to guard against piecemeal litigation and repetitive appeals.” Chao v. Rivendell Woods, Inc., 415 F.3d 342, 345 (4th Cir. 2005); see also GO Computer, Inc. v. Microsoft Corp., 508 F.3d 170, 176 (4th Cir.2007).
In De’Lonta, we applied the Domino Sugar rules to permit an appeal from an order dismissing a prisoner’s complaint without prejudice under § 1915(e)(2)(B) for failure to state a claim upon which relief could be granted. As noted, the district court found the prisoner’s complaint to wholly lack merit, but dismissed the case without prejudice to avoid burdening the prisoner with res judicata implications. Under the majority’s view, despite the fact that a prisoner in the situation presented in De’Lonta may unsuccessfully litigate an appeal of a patently baseless lawsuit all the way to the Supreme Court, that dismissal would not count as a strike based on the mere fortuity that the district court labeled the dismissal “without prejudice.” The fact that this scenario did not occur in De’Lonta (because we reversed the dismissal) is of no moment. The majority’s categorical exclusion of dismissals without prejudice for failure to state a claim compels the result that a dismissal in the scenario I have described cannot count as a strike if the dismissal is ultimately affirmed.
Although I disagree with the majority on this matter, I do not forecast that its decision will necessarily cause a proliferation of meritless prisoner litigation. As I have noted, our judicial system already faces that problem. I do believe that the majority’s decision will not advance Congress’ clear goal to reduce prisoner litigation, at least so long as district courts continue to err on the side of caution and dismiss meritless complaints without prejudice. However, the majority’s opinion may well prompt district judges who want to curb excessive (and often meaningless and time-consuming) prisoner litigation to discontinue that practice and, instead, start dismissing those complaints with prejudice.
Ill
The majority states that counting dismissals without prejudice for failure to state a claim as strikes would “impose indiscriminate restrictions” on prisoners’ access to the federal courts, Majority Op., at 397, but there is nothing at all indiscriminate in this regard. First, by enacting § 1915(g), Congress has restricted a prisoner’s access to the federal court system only if the prisoner seeks IFP status, and only if federal courts have previously dismissed three or more prior actions for the bases specified in that section, and only if the prisoner is not under imminent danger of serious physical injury. Even with this restriction, a prisoner is not barred from federal courts; instead, he simply must bear the ordinary costs of litigation like all other non-IFP litigants. Second, although the majority concludes that Congress did not intend for dismissals for failure to state a claim to count as strikes under § 1915(g), no one would realistically contend that Congress lacks the power to count those dismissals as strikes.
Although McLean appears to have had six actions dismissed for failure to state a claim while he has been incarcerated in Virginia, that description of his litigation history does not present the entire story. As with any prolific litigant, attempting to *410 catalog McLean’s litigation history from court records is not a simple task, but a quick review of the available records shows that he is the type of prisoner-litigant that Congress had in mind when it enacted the PLRA.[9] For example, this case arises from the Eastern District of Virginia, where McLean has unsuccessfully pursued several actions. However, McLean has actually been much more litigious in the Western District of Virginia, which has designated him as a “three striker” under § 1915(g).[10] In addition to McLean’s dismissals for failure to state a claim noted by the majority, most if not all of which probably could have been designated “with prejudice,” his designation as a three-striker appears to have led to the summary dismissal without prejudice of numerous other cases in the Western District. McLean has also had cases dismissed without prejudice in the Western District under § 1997e for failure to exhaust administrative remedies, and he has unsuccessfully pursued multiple appeals in this Court and in the Supreme Court.
The majority and I agree that the district court’s dismissal order for failure to state a claim in the appeal now before us should be affirmed. That order does not specify that it is without prejudice; thus, it will count as a strike even under the majority’s view. Given that the majority agrees that McLean has at least two previous strikes, McLean should hereafter be deemed a three-striker regardless of whether the majority’s holding regarding § 1915(g) is correct or not.
TV
Based on the foregoing, I concur in Part III of the majority opinion, and I dissent from the remainder.

. Even so, § 1915(b)(4) provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.”

. Our court has a similar "three strikes” rule for prisoners seeking writs of mandamus, prohibition, or other extraordinary relief. See 4th Cir. R. 21(c)(2).

. The district courts had discretion under § 1915(d) to dismiss a frivolous or malicious action with or without prejudice. See Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).

. Section 1997e(a) requires prisoners to exhaust administrative remedies within the prison before filing a civil action.

. Congress was undoubtedly aware of the Supreme Court’s decision in Neitzke, in which the Court held that a complaint was not necessarily frivolous under § 1915(d) because it failed to state a claim. The Neitzke Court observed that despite the apparent appeal under § 1915(d) of using failure to state a claim "as a broadbrush means of pruning meritless complaints from the federal docket, as a matter of statutory construction it is untenable.” 490 U.S. at 326, 109 S.Ct. 1827.

. The operative word in § 1915(g) is “dismissed,” Throughout this opinion, I refer to the word "dismissed” in various forms (e.g., "dismiss” and "dismissal”). Substantively for purposes of this issue, there is no difference in the form of the word.

. In analyzing this issue, the majority has limited its interpretation of the word "dismissed” to address only a dismissal for failure to state a claim for relief. For purposes of my opinion, I will utilize the majority's analytical framework. Accordingly, it is not necessary to attempt to reconcile our holding in Nagy that a dismissal for frivolousness under § 1915(e)(2)(B)(i) must be without prejudice. However, even if the analysis would require reading the word "dismissed” in a broader context, Nagy does not preclude my analysis.

. For the reasons set forth in this opinion, particularly Part I, I believe it is evident that the legislative purpose underlying § 1915(g) clearly does not support the majority’s decision.

. McLean appears to have litigated in Virginia under the name “Quentin McLean” and “Quentin McLean-El.” Additionally, a Westlaw search indicates that a “Quentin McLean” and a “Quentin McLean-El” also litigated unsuccessfully in the District of Columbia federal courts in the 1990s.

. McLean has appealed one order designating him as a three-striker, and we have placed that appeal in abeyance pending this appeal. See McLean v. Dr. Smith, C.A. No. 7:07cv584 (W.D.Va. Dec. 17, 2007) (No. 08-6180 4th Cir.).